UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTA ELIZA SANCHEZ FLORES, Individually and on behalf of all other persons similarly situated, | ECF CASE |
| Plaintiff, | No.: _____ |
| v. | CLASS AND COLLECTIVE ACTION COMPLAINT |
| EL BUKANITAS INC. D/B/A "BUKANITAS BAR" and VICTOR MANUEL GONZALES, Jointly and Severally, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Marta Eliza Sanchez Flores, on behalf of herself and all others similarly situated, hereby alleges through her attorneys, Lipsky Lowe LLP, as against Defendants El Bukanitas Inc. d/b/a "Bukanitas Bar" and Victor Manuel Gonzales as follows:

NATURE OF THE ACTION

1.     Plaintiff Marta Eliza Sanchez Flores worked as a server for Defendants El Bukanitas Inc. d/b/a "Bukanitas Bar" and Victor Manuel Gonzales (collectively, "Defendants") at their bar located in Brooklyn, New York, from September 2015 to mid-March 2020 and from July 4, 2020 to March 22, 2022.

2.     Plaintiff asserts on her behalf and other similarly situated current and former employees of Defendants, under Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to reimburse costs of uniforms and pay the additional required weekly amount for uniform laundering and maintenance, (iv) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law §

-1-

195.1, and (v) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

3.      Plaintiff asserts on behalf of herself and other similarly situated current and former employees of Defendants and those who elect to opt into this action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that Defendants willfully violated the FLSA by failing to pay overtime premium pay.

4.      Plaintiff asserts individual claims of negligent retention and supervision, assault and battery under New York common law.

                    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b).

6.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1) and (2): a substantial part of the events giving rise to the action occurred in this District; and Bukanitas Bar is a resident of this District.

7.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

                    THE PARTIES

8.      Plaintiff was, at all relevant times, an adult individual residing in New York, New York.

9.      Upon information and belief, Defendant Bukanitas Bar is a domestic business corporation that is organized under New York law and is authorized to do business

in the State of New York, with its principal place of business at 6014 New Utrecht Avenue, Brooklyn, New York 11219.

10.     Upon information and belief, Defendants employ more than 11 employees.

11.     Defendant Gonzales, upon information and belief, owns, operates and controls Defendant Bukanitas Bar's day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees at all relevant times.

12.     Each Defendant, either directly or indirectly, has hired Plaintiff and other employees, fired other employees, controlled Plaintiff's work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

## STATEMENT OF FACTS

13.     Defendants operate and manage Bukanitas Bar, a bar located at 6014 New Utrecht Avenue, Brooklyn, New York 11219.

14.     Bukanitas Bar is a late-night place for dancing and drinks and is generally open from 9:00 p.m. to at least 4:00 a.m. or 5:30 a.m.

Duties Performed and Hours Worked[1]

15.     Defendants employed Plaintiff as a server from September 2015 to mid-March 2020 and from July 4, 2020 to March 22, 2022.[2]

16.     As a server, Plaintiff was responsible for serving beverages to clients, cleaning the bar, stocking lemons, dishes and glasses at the bar, cleaning the bathroom, picking up garbage, and sweeping and cleaning the street outside of the bar.

---

[1] These subject lines are included only for organizational purposes.
[2] The date ranges are estimates based on Plaintiff's memory.

17.     From 2016 to mid-March 2020, Plaintiff generally worked 5 days a week, working from 10:00 p.m. to 5:15 a.m., without any breaks, equaling more than 7 hours per day and 36.75 hours worked per week.

18.     From around mid-March 2020 to July 4, 2020, Bukanitas Bar was closed due to the Covid-19 pandemic.

19.     From July 4, 2020 to around October 2020, Plaintiff generally worked 7 days a week, working from 7:00 p.m. to 12:00 a.m., without any breaks, equaling 5 hours per day and 35 hours worked per week.

20.     From around October 2020 to June 2021, Plaintiff generally worked 7 days a week, working from 4:00 p.m. to 12:00 a.m., without any breaks, equaling 8 hours per day and 56 hours worked per week.

21.     From June 2021 to January 2022, Plaintiff generally worked 7 days a week, working from 9:30 p.m. to 5:30 a.m., without any breaks, equaling 8 hours per day and 56 hours worked per week.

22.     From January 2022 to March 22, 2022, Plaintiff generally worked 6 days a week, working from 9:30 p.m. to 5:30 a.m., without any breaks, equaling 8 hours per day and 48 hours worked per week.

23.     When working for Defendants, Plaintiff worked with at least 3 to 8 other servers at any given shift and she estimates that during her entire employment, she worked with at least 20 other servers.

24.     From speaking with her coworkers and personal observations, Plaintiff knows that other servers worked similar hours as she.

Compensation

25.     Despite working these hours, Defendants paid Plaintiff a daily $55.00 flat rate, regardless of how many hours she worked.

26.     Defendants were not permitted to pay Plaintiff a fixed daily rate.[3]

27.     The following chart shows the minimum wage under the New York Labor Law for the relevant years for employers with more than 11 employees:

| Year | NY Min. Wage[4] | NY Tip Credit | NY Tip Minimum Wage |
|------|-----------------|---------------|---------------------|
| 2022 | $15.00 | $5.00 | $10.00 |
| 2021 | $15.00 | $5.00 | $10.00 |
| 2020 | $15.00 | $5.00 | $10.00 |
| 2019 | $15.00 | $5.00 | $10.00 |
| 2018 | $15.00 | $5.00 | $10.00 |
| 2017 | $11.00 | $3.50 | $7.50 |
| 2016 | $9.00 | $1.50 | $7.50 |

28.     During her employment, Defendants did not pay Plaintiff the minimum wage under the New York Labor Law, because her regular hourly rate fell below the required state minimum wage:

| Year | Weekly Hours | Weekly Earnings | Average Hourly Rate | Labor Law Minimum Wage[5] |
|------|--------------|-----------------|---------------------|---------------------------|
| 2022 | 40 | $385.00 | $9.63[6] | $15.00 |
| 2021 | 40 | $385.00 | $9.63 | $15.00 |
| 2020 | 40 | $385.00 | $9.63 | $15.00 |
| 2019 | 35 | $275.00 | $7.85 | $15.00 |
| 2018 | 35 | $275.00 | $7.85 | $15.00 |
| 2017 | 35 | $275.00 | $7.85 | $11.00 |
| 2016 | 35 | $275.00 | $7.85 | $9.00 |

---

[3] *See* Hospitality Industry Wage Order, 12 N.Y.C.R.R. §§ 146-2.5 ("Employers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly rate basis.").

[4] Under the Hospitality Industry Wage Order, "If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. §§ 146-3.5(b).

[5] https://dol.ny.gov/history-minimum-wage-new-york-state (last visited October 21, 2022)

[6] $385.00 / 40 weekly hours worked = $9.63 regular hourly rate

29.     Upon information and belief, Defendants availed themselves of the tip credit and paid Plaintiff below the statutory minimum wage.

30.     Defendants did not give Plaintiff and her coworkers the required notice of the "tip credit," and, as such, were not entitled to claim any tip credit and had to pay her at full statutory minimum wage.

31.     Plaintiff regularly worked over 40 hours per week.

32.     When she worked more than 40 hours in a week, Defendants only paid her at her daily fixed rate, regardless of the hours that she worked. In doing that, they failed to pay her *any* overtime premium pay for the hours she worked over 40 in any given week.

33.     Defendants did not require Plaintiff and her coworkers to clock in or out and failed to keep proper track of their hours.

34.     Defendants did not afford Plaintiff a 30-minute uninterrupted break during her shifts.

35.     Plaintiff frequently complained to Defendant Gonzales about not being properly and not being paid any overtime.

36.     When Plaintiff complained about not being paid properly, Defendant Gonzales ignored her complaints and told her that if she did not like how he paid her, she can quit.  Defendant Gonzales told her "everyone else is okay with how I pay them. If you continue to complaint, I will fire you… fu*k off…."

37.     Plaintiff has heard other servers complain that Defendants did not pay them overtime at the appropriate rate of pay, but Defendants ignored their complaints as well.

Uniform Violations

38.     Defendants required Plaintiff and her coworkers to wear uniforms during their employment, including requiring them to wear a different colored shirt for each day of the week, including red, blue, green, and white. Defendants also required them to wear black skirts and shoes.

39.     Defendants insisted that Plaintiff and other servers' shirts always look new and, as such, Plaintiff and her coworkers had to buy uniform shirts each month.

40.     During her employment, Plaintiff had to buy 2 shirts in every color, totaling at least 8 shirts per month, costing her between $20 to $25 each.

41.     Plaintiff bought a black skirt at least every 2 months, costing her $25 to $30 each, and she bought shoes at least every 2 months, costing her $50 to $55 a pair.

42.     Defendants failed to reimburse Plaintiff and the similarly situated employees for the cost of the uniform shirts, skirts and shoes.

43.     Defendants required Plaintiff and her coworkers to wash and clean their uniforms at home.

44.     Defendants failed to pay Plaintiff and the similarly situated employees an allowance for the care, maintenance and cleaning of their uniforms, which Defendants required them to wear during their employment.

45.     As a result of not reimbursing or compensating her for her uniform expenses and maintenance, Defendants effectively further reduced Plaintiff's wages below the statutory minimum wage.

46.     From speaking with them, Plaintiff knows that other servers, like her, were paid below the state statutory minimum wage, were not paid overtime premium pay and were not reimbursed or paid a maintenance allowance for their uniforms.

<u>Labor Law Notice and Wage Statement Violations</u>

47.     During her employment, Defendants paid Plaintiff in cash.

48.     Defendants did not provide Plaintiff or the other servers with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

49.     From speaking with them, Plaintiff knows that other servers were, like her, not given the required Labor Law notices.

50.     Defendants did not provide Plaintiff or the other waitstaff with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

51.     Upon information and belief, Defendants did not post at the bar a poster advising Plaintiff and other employees of their right to a minimum wage and overtime premium pay in their native language, Spanish.

<u>Dangerous Work Conditions & Defendants' Negligent Supervision</u>

52.     At all relevant times, Defendant Gonzales was and is married.

53.     At all relevant times, Defendant Gonzales pursued sexual relationships with his employees and expected them to be his lovers and have sexual relationships with him in order to receive work favors, such as being allowed to drink alcohol at work, to use profanities at work, to act inappropriately at work and being able to arrive to work several hours late but still get paid full daily salary and full portion of the waitstaff's tips. Employees that were not his lovers did not get such benefits.

54.     During all relevant times, Defendant Gonzales was involved in a sexual relationship with a server, Rachel Martinez, cashier, Garciella [last name unknown], bartender Jessica [last name unknown], and several dancers that work at Bukanitas Bar.

55.     Plaintiff was not Defendant Gonzales' lover and because of that he treated her worse off than the female employees who he was having sex with, holding her to higher standards at work while allowing his lovers to come to work late, drink and swear at work.

56.     In or around July 2021, Martinez, started harassing Plaintiff at work by using profanities against her, calling her "stupid" and an "asshole," in Spanish, and instigating conflict. Plaintiff complained to Defendant Gonzales right away but since Martinez was his lover, he looked the other way and failed to discipline her or stop the harassment.

57.     In early 2021, Martinez grew increasingly aggressive towards Plaintiff and on several occasions when they were working together, she started threatening her with physical violence, telling her "you are no one. I will hurt you," and "I will give you the best beating of your life. You are nothing."

58.     Martinez's comments were witnessed by several of Defendants' employees and Defendant Gonzales, putting Defendants on notice of Martinez's harassment, threats and intentions to hurt Plaintiff, but no one intervened.

59.     In early 2022, Plaintiff started being afraid of Martinez and she told Defendant Gonzales several times that she feared that Martinez would hurt her. Plaintiff also told him that as a mother of a child with disabilities, she cannot be hurt or be involved in any physical altercations because her child needs her.

60. Despite Plaintiff's pleas for help, Defendant Gonzales dismissed Plaintiff's complaints and fears of being attacked by Martinez and failed to discipline or address the inappropriate and threatening behavior with Martinez.

61. On March 22, 2022, Plaintiff came to work as normal at 9:30 p.m. and started her shift with the other servers scheduled to work that day.

62. On March 22, 2022, Martinez, who usually starts her shifts at 9:30 p.m., arrived to Bukanitas Bar at 1:15 a.m..

63. Upon seeing Martinez report to the bar several hours after the start of her 9:30 p.m. shift, Plaintiff asked her if she was going to work as server that night or if she was just visiting Defendant Gonzales at work. In response, Martinez got enraged and started yelling at Plaintiff and swearing at her calling her "stupid" and "asshole," in Spanish. Martinez threatened Plaintiff that if she asks her any more questions that she would hit her and "give her a beating." Plaintiff was shocked and apologized to Martinez for asking her the question. But Martinez was more enraged.

64. On March 22, 2022, Plaintiff felt unsafe around Martinez so she went to report her threats to Defendants, reporting what happened to the cashier, Garciella [last name unknown], and calling Defendant Gonzales on the phone. Defendant Gonzales told Plaintiff to meet him at the ATM on the bar's premises.

65. On March 22, 2022, when Plaintiff spoke to Defendant Gonzales at the ATM, she told him about Martinez's threats, telling him that "she is like a bomb ready to explode" and informed him that she feels unsafe and is afraid that Martinez will hurt her. In response, Defendant Gonzales told Plaintiff "not to worry about it," and said "[Martinez] won't do nothing," once again dismissing her complaints.

66.     On March 22, 2022, Plaintiff told Defendant Gonzales that she is afraid to continue working with Martinez and that she wants to go home. Defendant Gonzales forbade her to go home, telling her that the bar was busy, and she needs to finish her shift.

67.     On March 22, 2022, in or around 3:55 a.m., when Plaintiff was waiting for her drink orders at the bar, Martinez and an unidentified female friend, who came with her to the bar that night, attacked Plaintiff.

68.     Martinez pulled Plaintiff's hair and punched her 3 to 4 times in the face, shattering her reading glasses all over her face and causing her to briefly lose consciousness.

69.     After getting punched in the face, Plaintiff tried to defend herself against Martinez by pulling her hair and trying to push her back, but Martinez with the help of her friend held Plaintiff down, choked her, pulled her hair, repeatedly punched her in the head and face, hurting her, causing the glass from her reading glasses to cut her face in multiple places and broke her bottom teeth. Martinez's friend also intentionally punched Plaintiff in the ear, pulled her earrings down, breaking her ear cartilage and ripping her ear.

70.     During the vicious attack on Plaintiff, she screamed for help but no one intervened. Confused and under attack, Plaintiff saw that Defendant Gonzales was watching what was happening from the corner of the room but did not step in and failed to stop Martinez and her friend.

71.     On March 22, 2022, Plaintiff called the police and an ambulance for her to the Bukanitas Bar.

72.     After the attack, Plaintiff found herself bleeding from the nose, ear and the mouth and was very hurt and terrified that Martinez may return to hurt her.

-11-

73.     In the aftermath of the attack, Plaintiff heard that Defendant Gonzales told Martinez' friend to "run, before the police gets here," and helped her escape the premises. Plaintiff also saw Defendant Gonzales speaking to his lover, Martinez, and telling her, upon information and belief, that he will protect her no matter what.

74.     On March 22, 2022, after the assault and battery, Defendant Gonzales did not help Plaintiff who was bleeding profusely from her face. Instead, callously, he told Plaintiff to leave Bukanitas Bar and to go wait outside because she was "damaging his business."

75.     When the ambulance and police came, upon information and belief, Defendant Gonzales covered for Martinez and told them that she, not Plaintiff, was the victim of the attack.

76.     On March 22, 2022, both Martinez and Plaintiff were arrested.

77.     On March 22, 2022, Plaintiff was taken to the hospital and, to date, suffers from the injuries she sustained during the assault.

<u>Plaintiff's Emotional Distress and Other Damages</u>

78.     Due to continued aggression harassment, assault and battery and Defendants' negligent supervision of their employees, Plaintiff was subjected to and still suffers from severe emotional distress, including anxiety, depression, crying spells, inability to sleep and general loss of enjoyment of life, feelings of dread, fear of physical harm, fear of coming to work and fear of losing her job if she spoke up against Defendants' dangerous work environment, and she still suffers from debilitating headaches, altered appearance and other physical injuries.

79.     As a result of Defendants' harassment and negligent supervision, Plaintiff has suffered and continues to suffer, *inter alia*, lost wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

<u>CLASS ACTION ALLEGATIONS</u>

80.     Plaintiff asserts these allegations and claims on her own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were servers and other comparable tipped positions at any time since November 2, 2016 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees under the New York Labor Law (the "Class Members").

81.     The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 40 Class Members exist.

82.     Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in state court against a corporate defendant.

83.     Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

84.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

85.     Plaintiff has the same interest in this matter as all other Class Members and her claims are typical of Class Members'.

86.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.      Whether Defendants employed Plaintiff and the Class Members within the meaning of the Labor Law;

b.      What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

c.      Whether Defendants failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek;

d.      Whether Defendants gave Plaintiff and the Class Members proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 requires;

e.      Whether Defendants can avail themselves of a tip credit and pay Plaintiff and the Class Members less than the statutory minimum wage;

f.      Whether Defendants violated the Labor Law by failing to reimburse their employees for their uniform expenses and paying them the required uniform maintenance allowance.

g.      Whether Defendants failed to provide Plaintiff and the Class Members Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1;

h.      Whether Defendants failed to provide Plaintiff and the Class Members wages statements under Labor Law § 195.3;

i.      Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiff and the Class Members are employed;

j.      Whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

k.      Whether Defendants should be enjoined from such violations of the Labor Law in the future.

COLLECTIVE ACTION ALLEGATIONS

87.    Under 29 U.S.C. § 206, Plaintiff seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were servers and other comparable tipped positions with different titles at any time since November 2, 2019 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees under the FLSA (the "Collective Action Members").

88.    Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.      Defendants employed the Collective Action Members within the meaning of the FLSA;

b.      Collective Action Members performed similar duties;

c.      Defendants willfully or recklessly violated the FLSA;

d.      Whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek, violating the FLSA and the regulations promulgated thereunder;

e. Defendants should be enjoined from such violations of the FLSA in the future; and

f. The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

FIRST CAUSE OF ACTION
**FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA**
(On Behalf of Plaintiff and the Class Members)

89. Plaintiff realleges every preceding allegation as if set forth fully herein.

90. Plaintiff consents to be a party to this action under 29 U.S.C. §216(b).

91. Defendants employed, and/or continue to employ, Plaintiff and the Collective Action Members within the meaning of the FLSA.

92. Defendants were required to pay Plaintiff and the Collective Members no less than 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

93. At all relevant times, Defendants had a policy and practice of not paying overtime at the applicable overtime rate to their employees for their hours worked in excess of 40 hours per workweek.

94. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

95. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff and the Collective Members' compensation.

96. Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and

practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

97.     In failing to compensate Plaintiff and the Collective Members for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

<u>SECOND CAUSE OF ACTION</u>
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

98.     Plaintiff realleges every preceding allegation as if set forth fully herein.

99.     Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Class Members.

100.     Defendants operate a bar, which constitutes an "eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public," included within the hospitality industry and, as such, are covered under the Hospitality Industry Wage Order. 12 N.Y.C.R.R. §§ 146-3.1.

101.     The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff and the Class Members.

102.     Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members the statutory minimum wage.

103.     Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor

summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

104. Defendants paid Plaintiff and the Class Members below the statutory minimum wage during their employment.

105. Defendants were not eligible to take a tipped credit and pay Plaintiff and the Class Action Members below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because Defendants retained a portion of Plaintiff and the Class Action Members' tips and failed to provide them with proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 require.

106. Defendants are accordingly liable to Plaintiff and the Class Action Members for the difference between the hourly rate at which they paid them and the statutory minimum wage.

107. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the minimum wage.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

108. Plaintiff realleges every preceding allegation as if set forth fully herein.

109. Defendants are employers under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Class Members.

110. Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

111.     Defendants failed to pay Plaintiff and the Class Members the overtime wages to which they were entitled, violating N.Y. Lab. Law § 650 and Part 142, § 142-2.2 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

112.     Under the Labor Law, when paying tipped employees for hours they worked over 40 in a week, an employer is required to multiply the regular rate of pay by 1.5 and then subtract the tip credit.

113.     Because Defendants are not permitted to claim a tip credit because they did not give Plaintiff and their other employees the required notice, they were required to pay Plaintiff and the Class Members at an overtime at a rate of at least the statutory minimum wage x 1.5.

114.     Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the correct amount of overtime wages.

<u>FOURTH CAUSE OF ACTION</u>
UNIFORM VIOLATIONS
UNDER THE NEW YORK LABOR LAW
(Brought on Behalf of Plaintiff and Class Members)

115.     Plaintiff realleges every preceding allegation as if set forth fully herein.

116.     Defendants failed to pay Plaintiff and the Class Members the full amount of their wages as a result of deductions for uniform-related expenses, violating Labor Law Article 6 § 193 and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. § 137-2.5.

117.     Defendants required Plaintiff and the Class Members to purchase specific uniforms from them and those uniforms while working.

118.    Defendants failed to reimburse Plaintiff and the Class Members for the cost of the uniforms, violating 12 N.Y.C.R.R. § 137-1.8.

119.    Additionally, Defendants failed to launder or maintain the uniforms that they required Plaintiff and the Class Members to wear and failed to pay them the required weekly amount for such laundering and maintenance.

120.    Due to Defendants' violations of the Labor Law, Plaintiff and the Class Members are entitled to recover from Defendants their costs for purchasing the uniforms, unpaid uniform related expenses, statutory liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>FIFTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

121.    Plaintiff realleges every preceding allegation as if set forth fully herein.

122.    Defendants willfully failed to supply Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within 10 business days of their first employment date.

123.    Due to Defendants' violations of N.Y. Lab. Law § 195.1, Plaintiff and the Class Members are entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b.

SIXTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

124.    Plaintiff realleges every preceding allegation as if set forth fully herein.

125.    Defendants have willfully failed to supply Plaintiff and the Class Members with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

126.    Due to Defendants' violations of Labor Law § 195.3, Plaintiff and the Class Members are entitled to recover from Defendants $250.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

SEVENTH CAUSE OF ACTION
CIVIL ASSAULT UNDER NEW YORK LAW

127.    Plaintiff repeats every preceding allegation as if fully set forth herein.

128.    When Martinez and her friend attacked, punched, choked and otherwise hurt Plaintiff's face and body, they intentionally put Plaintiff in imminent fear of harmful contact.

129.    Martinez and her friend assaulted Plaintiff.

130.    When Martinez attacked, punched, choked and otherwise hurt Plaintiff's face and body, they were acting within the scope of her employment, as Defendants were aware that Martinez is prone to this behavior and did nothing to stop it despite several of Plaintiff's complaints.

131.    Based on Martinez's known tendency to be aggressive in the workplace and make threats to Plaintiff at work, Defendants could have foreseen that she attack and

physical hurt Plaintiff's face and body.

132.   Defendants are vicariously liable for Martinez's conduct under *respondeat superior*.

EIGHTH CAUSE OF ACTION
CIVIL BATTERY UNDER NEW YORK LAW

133.   Plaintiff repeats every preceding allegation as if fully set forth herein.

134.   Plaintiff did not consent to Martinez and her friend physically punching, choking and hurting her face and body.

135.   Martinez intentionally punched, choked and hurt Plaintiff's face and body

136.   Martinez and her friend committed battery against Plaintiff.

137.   Defendants are vicariously liable for Martinez's battery under *respondeat superior*.

NINTH CAUSE OF ACTION
NEGLIGENT RETENTION, AND SUPERVISION
UNDER NEW YORK COMMON LAW

138.   Plaintiff repeats every preceding allegation as if fully set forth herein.

139.   Defendants had a duty to supervise and prevent known risks of harm to its employees, including Plaintiff, who was under the supervision and control of Defendants.

140.   Defendants, and/or their agents, servants, and/or employees negligently retained and supervised Martinez, who was careless, malicious, negligent, reckless, dangerous and acted in a willful and wanton manner in not possessing the requisite knowledge, skill and moral character to properly work with other employees, including Plaintiff.

141.   Defendants, and/or their agents, servants, and/or employees knew or should have known that Martinez, without consent, insulted, threatened physical harm, punched,

choked and otherwise hurt Plaintiff's face and body, and/or had the capacity and/or propensity to do so.

142.    As a result of such negligent supervising, and/or retention, Plaintiff suffered serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not yet been ascertained.

143.    By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendants in such sums as a jury would find fair, just and adequate.

144.    By reason of the foregoing, Plaintiff is entitled to punitive damages from Defendants in such sums as a jury would find fair, just and adequate.

145.    The amount of damages sought exceeds the jurisdiction of all lower courts whichwould otherwise have jurisdiction.

146.    This action falls within exceptions to Article 16 of the C.P.L.R.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on her behalf and the Class Action Members, respectfully requests this Court grant the following relief:

a.    Accepts jurisdiction over this matter;

b.    Impanels and charges a jury with respect to the causes of action;

c.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Plaintiff and her counsel to represent the Class Members;

d.    Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all

similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members and tolling of the statute of limitations;

e.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

f.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.      An award for unpaid minimum wage under the Labor Law

h.      And award for unpaid overtime premium pay under the Labor Law and the FLSA;

i.      An award for reimbursement of uniform-related expenses, business-related expenses and for unlawful deductions under the Labor Law;

j.      An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

k.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

l.      An award of liquidated damages as a result of Defendants' willful Labor Law and FLSA violations;

m.      Equitably tolling the statute of limitations under the FLSA;

n.      An award to Plaintiff for back pay, front pay and all benefits along with pre and post judgment interest in the amount of at least $150,000.00.

o.      An award to Plaintiff for punitive, liquidated and compensatory damages including damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination is repulsive to legislative enactments in the amount of at least $500,000.00.

p.      An award of damages for Plaintiff's assault and battery.

q.      An award of pre-judgment and post-judgment interest;

r.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

s.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
        November 4, 2022

LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10170
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com