UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARTA ELIZA SANCHEZ FLORES,
     *individually and on behalf of all others similarly
     situated*,

                      Plaintiff,            **REPORT AND
                                          RECOMMENDATION**
      -against-                        22-CV-6751-DG-SJB

EL BUKANITAS INC. and
VICTOR MANUEL GONZALES,
     *as an individual*,

                      Defendants.
---------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

      On August 27, 2020, Plaintiff Marta Eliza Sanchez Flores ("Sanchez Flores") brought this action on behalf of herself and a putative Fair Labor Standards Act ("FLSA") collective against El Bukanitas Inc. d/b/a Bukanitas Bar ("El Bukanitas") and Victor Manuel Gonzales ("Gonzales") (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199, as well as common-law assault, battery, and negligent retention and supervision claims.  (Compl. dated Nov. 4, 2022 ("Compl."), Dkt. No. 1).  On May 30, 2023, Sanchez Flores moved for a default judgment against Defendants.  (Mot. for Default J. dated May 30, 2023 ("Default J. Mot."), Dkt. No. 14).  For the reasons stated below, it is respectfully recommended that the motion be granted in part, as indicated herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

      El Bukanitas is a New York domestic business corporation with its principal place of business in Brooklyn, New York.  (Compl. ¶ 9).  Gonzales is the owner and operator of

El Bukanitas, manages the day-to-day operations of the business, and has final power and authority over all personnel decisions. (*Id.* ¶¶ 11–12). Sanchez Flores was employed as a server by Defendants from September 2015 to March 2020, and again from July 2020 to March 2022. (*Id.* ¶ 15). Under Gonzales's management, she performed duties such as serving beverages; restocking lemons, glasses, and dishes; picking up garbage; and cleaning the bar, bathroom, and street outside of the bar. (*Id.* ¶ 16). Sanchez Flores worked for the Defendants for two separate periods of time, due to the temporary closure of El Bukanitas during the COVID-19 pandemic. (*Id.* ¶ 18). Between 2016 and March 2020, Sanchez Flores alleges that she generally worked five days each week, from 10:00 P.M. to 5:15 A.M., for more than 7 hours per day and for approximately 35 hours each week. (*Id.* ¶ 17; Decl. of Marta Eliza Sanchez Flores dated May 30, 2023 ("Sanchez Flores Decl."), Dkt. No. 14-3 ¶ 7). After El Bukanitas reopened, between July 2020 and October 2020, she resumed working, but this time for seven days each week, from 7:00 P.M. to 12:00 A.M., for 5 hours per day and for approximately 35 hours each week. (Compl. ¶ 19). From October 2020 and January 2022, she also worked seven days each week, but her hours increased to 8 hours per day, totaling 56 hours each week. (*Id.* ¶¶ 20–21). Lastly, between January 2022 and March 2022, Sanchez Flores worked for six days each week for 8 hours per day, totaling 48 hours each week. (*Id.* ¶ 22).[1] For the entire time she worked for them, Defendants paid Sanchez Flores a flat daily wage of $55.00, regardless of how many hours she worked. (*Id.* ¶ 25). Defendants did not pay

---

[1] Sanchez Flores's shifts changed three times during the post-COVID period: between July 2020 and October 2020, she worked from 7:00 P.M. to 12:00 A.M.; between October 2020 and June 2021, she worked from 4:00 P.M. to 12:00 A.M.; and between June 2021 and March 2022, she worked from 9:30 P.M. to 5:30 A.M. (Compl. ¶¶ 19–22).

Sanchez Flores overtime wages, (*id.* ¶ 32), and availed themselves of the waitstaff's tips, including Sanchez Flores's tips.  (*Id.* ¶¶ 29–30, 105, 113).  In addition, Sanchez Flores alleges that Defendants failed to follow various state notice and record-keeping requirements, as required by the Wage Theft Prevention Act.  (*Id.* ¶¶ 30, 48–51, 103, 105, 121–26).

Sanchez Flores commenced this action on November 4, 2022.  (Compl.).  She alleged nine causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay minimum wage under NYLL; (3) failure to pay overtime wages under NYLL; (4) uniform violations under NYLL; (5) failure to provide a wage notice under NYLL § 195(1); (6) failure to provide wage statements under NYLL § 195(3); (7) civil assault under New York common law; (8) civil battery under New York common law;[2] and (9) negligent retention and supervision under New York common law.[3]  (*Id.* ¶¶ 89–146).

---

[2] Sanchez Flores does not seek default on her claims for civil assault and civil battery.  (Mem. of Law in Supp. of Mot. for Default J. dated May 30, 2023 ("Mem. of Law"), Dkt. No. 14-1 at 2 n.1).  Because Sanchez Flores does not seek default on these claims, they are deemed waived, and the Court recommends their dismissal.  *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962, 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4586350, at *1 (Sep. 29, 2022).

[3] Sanchez Flores has stipulated to dismiss her negligent retention and supervision claim against Defendants.  (Stipulation of Dismissal dated Jan. 25, 2024, Dkt. No. 18; *see also* Letter dated Jan. 25, 2024, Dkt. No. 17).  The Second Circuit has held that negligent retention and supervision claims by an employee based on the harassment or assault of a co-worker are barred by the New York Workers' Compensation Law.  *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001); *see also* N.Y. Workers' Comp. Law § 29(6) ("The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ[.]").  Although Sanchez Flores originally sought emotional distress damages for this claim in her motion for default judgment, (*see* Mem. of Law at 19–20), the Court does not enter judgment or award damages for that claim.

El Bukanitas was served with a summons and a copy of the Complaint via the Office of the Secretary of State of New York on November 18, 2022. (Summons Returned Executed filed Dec. 6, 2022, Dkt. No. 6). After Plaintiff failed to serve Gonzales, the Court ordered Plaintiff to file a status report. (Status Report Order dated Dec. 27, 2022). Plaintiff then served Gonzales pursuant to N.Y. C.P.L.R. § 308(2). On January 20, 2023, Gonzales was served with the summons and Complaint at his place of business, El Bukanitas. (Summons Returned Executed filed Jan. 27, 2023, Dkt. No. 9). The process server attested to leaving the summons and Complaint with "Nadine R.," who refused to provide her last name. (*Id.*). The Affidavit of Service averred that Nadine R. was "authorized" to accept service on behalf of Gonzales and was working at reception for the business. (*Id.*). On February 2, 2023, within 20 days of personally serving Gonzales, Plaintiff's process server mailed a copy of the summons and Complaint through the U.S. Postal Service to Gonzales's place of business. (Summons Returned Executed filed Feb. 9, 2023, Dkt. No. 10).

Defendants failed to appear, answer, or otherwise respond to the Complaint. Sanchez Flores sought a certificate of default against both Defendants, (Req. for Certificate of Default dated Jan. 11, 2023, Dkt. No. 7; Req. for Certificate of Default dated Apr. 13, 2023, Dkt. No. 12), which the Clerk of Court granted. (Clerk's Entry of Default dated Jan. 12, 2023, Dkt. No. 8; Clerk's Entry of Default dated Apr. 18, 2023, Dkt. No. 13 ("Entries of Default")). On May 30, 2023, Sanchez Flores filed her motion for default judgment against both Defendants. (Default J. Mot.).[4]

---

[4] The Court issued an order on November 28, 2023, due to Sanchez Flores's apparent failure to mail all default judgment papers to the Defendants, as required by Local Civil Rule 55.2(c), or file proof of mailing on the docket. (Order dated Nov. 28, 2023). After she did not respond, the Court issued an order to show cause on December

Sanchez Flores seeks recovery of: (1) $50,165.00 in unpaid wages; (2) $25,380.00 in unpaid overtime wages; (3) $94,607.85 in liquidated damages; (4) $14,565.00 in unreimbursed uniform expenses and an additional $4,497.85 in unreimbursed uniform maintenance expenses; (5) $5,000 in penalties for not receiving required wage notices; and (6) $5,000 in penalties for not receiving required wage statements.  (Pl.'s Damages Calculations ("Pl.'s Damages"), attached as Ex. G to Decl. of Douglas B. Lipsky dated May 30, 2023 ("Lipsky Decl."), Dkt. No. 14-2; *see also* Mem. of Law at 17–19).  She seeks $28,132.53 in pre-judgment interest, as well as post-judgment interest.  (Mem. of Law at 18–20).  Sanchez Flores also seeks reimbursement for reasonable attorney's fees and costs in the amount of $19,617.15.  (*Id.* at 21).

DISCUSSION

I.    Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the

---

15, 2023, directing Sanchez Flores to comply with the Court's original order and explain her failure to comply.  (Order to Show Cause dated Dec. 15, 2023).  In response, Sanchez Flores filed proof of service of her motion for default judgment and supporting papers to both El Bukanitas and Gonzales via First Class Mail on December 4, 2023.  (Aff. of Service dated Dec. 18, 2023, Dkt. No. 15).  Sanchez Flores's counsel also noted that they unintentionally omitted Defendant Gonzales's apartment number from the mailing to his address.  However, the mailing was not returned as undelivered.  (Letter dated Dec. 21, 2023, Dkt. No. 16).

default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a default against El Bukanitas on January 12, 2023, and against Gonzales on April 18, 2023. (Entries of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Defendants' failure to respond to the Complaint demonstrates their default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them). They were properly served with the summons and Complaint. (Summons Returned Executed filed Dec. 6, 2022, Dkt. No. 6; Summons Returned Executed filed Jan. 27, 2023, Dkt. No. 9; Summons Returned Executed filed Feb. 9, 2023, Dkt. No. 10). The motion for default judgment and supporting papers were also served via mail to the Defendants' last known business address. (Aff. of Service dated Dec. 18, 2023, Dkt. No. 15). Notwithstanding this notice and service,

Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way.  Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to Sanchez Flores's allegations because Defendants did not appear, and no defense has been presented to the Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Sanchez Flores would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an

admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).  "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (first citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As discussed below, the Court respectfully recommends that Defendants be found liable for violations of the minimum wage provisions of NYLL, the overtime provisions of FLSA and NYLL, and the notice and record-keeping requirements and wage statement provisions of the Wage Theft Prevention Act.  However, the Court recommends that Defendants not be found liable for violations of the uniform reimbursement provisions of NYLL and that those claims be dismissed.

A. <u>FLSA Coverage</u>

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).  *See generally Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985).  "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much.  Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402, at *1 (Feb. 22, 2013); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963, at *1 (Sept. 23, 2021).

The Court finds that Sanchez Flores has provided the factual detail necessary to support a finding that Defendants are engaged in interstate commerce and thus subject to FLSA.[5]  "Defendants operate and manage Bukanitas Bar . . . . [which] is a late-night place for dancing and drinks[.]"  (Compl. ¶¶ 13–14).  As part of her duties, Sanchez Flores served beverages, cleaned the bar and bathroom, and stocked materials.  (*Id.*

---

[5] Sanchez Flores has not alleged that she was personally engaged in commerce or in the production of goods for commerce.  *See Blok Chocolatier LLC*, 2021 WL 4341103, at *3; *see also Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage [under FLSA].").  Sanchez Flores concedes that such coverage does not exist.  (*See* Mem. of Law at 7–8).

¶ 16).  Of the beverages that she served and cleaning products that she used, Sanchez

Flores had personal knowledge of products from outside of New York state, including

"Corona, Heineken, Modelo, and Victoria alcoholic beer" and "Clorox Bleach to clean the

bathroom."  (Sanchez Flores Decl. ¶ 4).

The handling of items that have "undoubtedly moved in interstate commerce" is

sufficient to allege enterprise coverage.  *See Archie v. Grand Cent. P'ship, Inc.*, 997

F. Supp. 504, 530 (S.D.N.Y. 1998) ("[L]ocal business activities fall within the reach of

the FLSA when an enterprise employs workers who handle goods or materials that have

moved or been produced in interstate commerce."); *see also Juarez v. Wheels Pizza

Inc.*, No. 13-CV-261, 2015 WL 3971732, at *2 n.3 (S.D.N.Y. June 30, 2015) (finding

plaintiff's allegations that he handled goods such as drinks and other supplies that were

produced out-of-state to be sufficient to establish that his employer, a pizza stand, was

engaged in interstate commerce); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120,

2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) ("[I]t is inconceivable that none of

the trucks or other materials used by Plaintiffs in their line of work originated outside of

New York.").[6]

B.  NYLL Unpaid Minimum Wages Claim

Sanchez Flores alleges that Defendants failed to pay her the required minimum

hourly rate under NYLL.  In 2016, the general minimum wage rate for all of New York

---

[6] Sanchez Flores attests that El Bukanitas "had an annual gross volume of business of at least $500,000.00 when it employed [her]."  (Sanchez Flores Decl. ¶ 3). This is sufficient on default.  *See, e.g.*, *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015) (adopting report and recommendation) (finding plaintiffs' allegations "upon information and belief that defendants' gross revenues exceed[ed] $500,000 [were] sufficient to satisfy the $500,000 statutory threshold" for establishing enterprise coverage (quotations omitted)).

state was $9.00 per hour.  *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited Feb. 14, 2024).  The minimum wage rate for New York City employers with eleven or more employees thereafter increased yearly: $11.00 per hour in 2017; $13.00 per hour in 2018; and between December 31, 2018 and January 1, 2024, $15.00 per hour.  *Id.*; NYLL § 652(1)(a); (*see also* Compl. ¶¶ 27–28).[7]  When Sanchez Flores worked for Defendants between 2016 and 2019, she was paid at an approximate rate of $7.86 per hour;[8] between 2020 and 2022, she was paid at an approximate rate of $9.63 per hour; and for 2022, she was paid at an approximate rate of $8.25 per hour.  (Compl. ¶ 28; Pl.'s Damages at 1).  The Complaint further alleges that Sanchez Flores was paid this rate for all hours that she worked.  (Compl. ¶ 25).  This is below the minimum wage set by New York City under NYLL.  The Court finds the Defendants liable for minimum wage violations under NYLL.

C.  Overtime Wages Claims

Sanchez Flores alleges that Defendants violated the overtime provisions of both FLSA and NYLL.  The Court finds that she has properly alleged liability under both statutes.

---

[7] The Complaint alleges that Defendants had more than eleven employees while Sanchez Flores was employed by them.  (Compl. ¶ 10; Sanchez Flores Decl. ¶ 5).

[8] The Complaint calculates Sanchez Flores's hourly rate for this period as $7.85.  (Compl. ¶ 28).  However, under the Court's calculations, dividing her weekly earnings, $275.00, by her weekly hours worked, 35, results in an approximate amount of $7.857.  Rounding up, her hourly rate would be $7.86.

1.  FLSA Overtime Claim

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed.'"[9]  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  A plaintiff "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 114).  Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . .[,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation."  *Id*. at 89.  Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible" and thereby survive a motion to dismiss.  *Dejesus*, 726 F.3d at 90 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Complaint states that Sanchez Flores worked more than 40 hours each week for Defendants for three different periods: from October 2020 to June 2021 and from June 2021 to January 2022, she worked 56 hours each week (8 hours per day, 7 days per

---

[9] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5.  The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum.  *Id*. § 778.5.

week); and from January 2022 to March 22, 2022, she worked 48 hours per week (8 hours per day, 6 days per week).  (Compl. ¶¶ 20–22).  The Complaint alleges that for the relevant time that Sanchez Flores worked for Defendants, October 2020 to March 2022, Defendants paid her a flat sum of $55.00 per day.  (*Id.* ¶ 25).  Sanchez Flores was not paid at a wage rate of time and a half for her hours regularly worked in excess of 40 hours per week.  (*Id.* ¶ 32).  Sanchez Flores's claims include the necessary factual allegations to state a FLSA overtime violation.  Based on these undisputed allegations, the Court finds that Defendants are liable for violations of FLSA's overtime provisions.

   2.  NYLL Overtime Claim

   Defendants failed to pay Sanchez Flores the required overtime hourly rate under NYLL.  NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."  12 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 142-2.2.  Sanchez Flores asserts that she worked over 40 hours per week between October 2020 and March 2022.  (Compl. ¶¶ 20–22).  Specifically, she alleges that she worked from 4:00 P.M. to 12:00 A.M., seven days a week, totaling 56 hours each week, between October 2020 and June 2021; from 9:30 P.M. to 5:30 A.M., seven days a week, totaling 56 hours per week, between June 2021 to January 2022; and from 9:30 P.M. to 5:30 P.M., six days a week, totaling 48 hours per week, between January 2022 and March 2022.  (*Id.*).  The Complaint alleges that Defendants did not pay Sanchez Flores the required overtime hourly wage.  (*Id.* ¶ 32).  In light of this allegation, as well the fact that her flat salary meant that she was paid nothing for her work over 40 hours, *see supra* at pp. 12, Defendants are liable for unpaid overtime under NYLL.

D.  <u>NYLL Uniform Violations Claims</u>

Sanchez Flores alleges two separate violations of NYLL with respect to uniforms. First, she asserts she was not reimbursed for the cost of purchasing parts of her required uniform.  (Compl. ¶ 118); 12 N.Y.C.R.R. § 146-1.8(a) ("When an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday.").  And second, she asserts she was not reimbursed for maintenance costs for this required uniform.  (Compl. ¶ 119); 12 N.Y.C.R.R. § 146-1.7(a).  Sanchez Flores's allegations, even taken as true, are insufficient to state either claim.

1.  <u>Uniform Purchase Costs</u>

Sanchez Flores was required to wear specific clothing at El Bukanitas: a different colored shirt for each day of the week, along with black skirts and shoes.  (Compl. ¶ 38; Sanchez Flores Decl. ¶ 16).  Sanchez Flores asserts that she had to buy "2 shirts in every color, totaling at least 8 shirts per month, costing [her] an average of $22.50 each, a black shirt at least every 2 months, costing [her] an average of $27.50 each, and shoes at least every 2 months, costing [her] $52.50 a pair," none of which were reimbursed. (Sanchez Flores Decl. ¶¶ 16, 18).  The Court finds Sanchez Flores has not demonstrated these clothing items were "required uniforms" under New York law and recommends this claim be denied.

Under New York law, employers are obligated to reimburse employees for the cost of "required uniforms."  12 N.Y.C.R.R. § 146-1.8(a).  A "required uniform" is defined as "clothing required to be worn while working at the request of an employer . . . *except* clothing that may be worn as part of an employee's ordinary wardrobe."  *Id.* § 146-3.10(a) (emphasis added).  An employee's "ordinary wardrobe" is "ordinary basic street

clothing selected by the employee where the employer permits variations in details of dress." *Id.* § 146-3.10(b); *e.g.*, *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (finding "black dress pants, black dress shoes, and black belt . . . fall within the scope of 'ordinary basic street clothing'" and did "not constitute a required uniform" under NYLL).

Sanchez Flores does not allege the shirts, skirts, or shoes were required to have any branding or that she was required to purchase them from Defendants. *See Salinas*, 123 F. Supp. 3d at 476. In fact, she makes no allegations about style or fit such that the Court could conclude that these clothes could not be worn as part of her "ordinary wardrobe." Without such allegations, she cannot prevail on this claim, even on default. *See, e.g.*, *Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-CV-2696, 2018 WL 7291455, at *20 (S.D.N.Y. Dec. 6, 2018) ("With regard to the work clothes, . . . he has not pleaded any facts that suggest that the clothes he allegedly purchased could not have been 'worn as part of [his] ordinary wardrobe,' *see* 12 N.Y.C.R.R. § 146-3.10, or that the clothing was 'specifically required for the performance of the employer's particular work,' 29 C.F.R. § 531.35. Accordingly, this Court finds that there is an insufficient basis in the record for awarding [plaintiff] the amount he spent on 'work clothes.'" (second alteration in original)), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 123422 (Jan. 3, 2019).

2. <u>Uniform Maintenance Pay</u>

If an employer requires employees to wear uniforms but does not "maintain"—meaning "washing, ironing, dry cleaning, alterations, repair, or any other maintenance necessary"—those uniforms, the employer must provide uniform maintenance pay to

compensate employees for the cost of maintaining their uniforms.  12 N.Y.C.R.R. § 146-

1.7(a).  There is an exception

> where required uniforms
> (1) are made of "wash and wear" materials;
> (2) may be routinely washed and dried with other personal garments;
> (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and
> (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.

*Id.* § 146-1.7(b); *see, e.g.*, *Camara v. Kenner*, No. 16-CV-7078, 2018 WL 1596195, at

*13–*14 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment in favor of defendants

on the "wash and wear" exception where "plaintiffs' uniforms were made of 'wash and

wear' material, they were washed by the plaintiffs themselves, and there is no indication

that the uniforms required any special cleaning procedures, such as ironing or dry

cleaning").

Sanchez Flores was required to wear a different colored shirt each day, a black

skirt, and shoes.  (Compl. ¶ 38; Sanchez Flores Decl. ¶ 16).  Sanchez Flores makes no

suggestion that any part of her uniform required any maintenance beyond "wash[ing]

them and maintain[ing] them at home," (Sanchez Flores Decl. ¶ 18), which does not

entitle her to maintenance pay.  *See Camara*, 2018 WL 1596195, at *13.  Because the

Court cannot conclude, even taking Sanchez Flores's allegations as true, that the "wash

and wear" exemption does not apply here, the Court recommends this claim be denied.

E.  <u>Wage Theft Prevention Act Claims</u>

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide

written wage notice "within 10 business days of his first day of employment."

*Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (first quoting *Salinas*, 123 F. Supp. 3d at 474; and then citing NYLL § 195(1)(a)).  The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee."  NYLL § 195(1)(a).  The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid.  *Id.* § 195(3).

The Complaint alleges that Defendants never provided Sanchez Flores with a wage notice.  (Compl. ¶¶ 48, 51).  She was also never provided an accurate wage statement with each payment, as required by the WTPA.  (*Id.* ¶ 50).  Accordingly, Sanchez Flores has sufficiently established liability on these claims.  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555, at *2 (Apr. 12, 2018).

III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent

determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002). An employee may meet her burden of showing the amount and extent of her hours worked through her own recollection. *See Pineda*, 831 F. Supp. at 674. As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (holding that district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers" (citations omitted)).

A.  Unpaid Minimum Wages

NYLL requires that a plaintiff be paid at or above the minimum wage rate.  *See* NYLL § 652(1)(a).  During the period that Sanchez Flores worked for Defendants, she was paid below the applicable New York State minimum wage under NYLL at the time. Between 2016 and July 2020, she worked approximately 35 hours per week; at her flat rate of $55.00 per day for five days per week, she was paid $7.86 per hour, below the New York State minimum wage rates for that time period.  *See supra* at pp. 10–11 ("In 2016, the general minimum wage rate for all of New York state was $9.00 per hour.  *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited Feb. 14, 2024). The minimum wage rate for New York City employers with eleven or more employees thereafter increased yearly: $11.00 per hour in 2017; $13.00 per hour in 2018; and between December 31, 2018 and January 1, 2024, $15.00 per hour.  *Id.*; NYLL § 652(1)(a)[.]).  Between July 2020 and October 2020, she worked 35 hours per week; at her flat rate of $55.00 per day for seven days per week, she was paid $11.00 per hour, which was also below minimum wage.  *See* NYLL § 652(1)(a).  Between October 2020 and January 2022, she worked the maximum of 40 hours per week at regular pay; at her flat rate of $55.00 per day for seven days per week, she was paid $9.63 per hour,[10] below minimum wage.  *See id.*  Lastly, between January 2022 and March 22, 2022, she worked the maximum of 40 hours per week at regular pay; at her flat rate of $55.00 per day for

---

[10] Although $15.00 minus $9.63 is $5.37, Sanchez Flores's technical hourly rate for this time period was $9.625, rounded up to $9.63.  (*See* Compl. ¶ 28 n.6).  $15.00 minus $9.625 is $5.375, which the Court rounds to $5.38.  The Court applies rounding to the amounts in the table below.  *See also supra* at pp. 11 n.8.

six days per week, she was paid $8.25 per hour, below minimum wage.  *See id.*  The

Court's calculations of Sanchez Flores's unpaid minimum wages are set out below.

| Time Period | Hourly Wage Paid to Plaintiff | Minimum Wage Under NYLL | Unpaid Minimum Wage Per Hour | Regular Hours Worked Per Week | Weeks Worked | Total Unpaid Minimum Wage Under NYLL |
|---|---|---|---|---|---|---|
| 2016 | $7.86 | $9.00 | $1.14 | 35 | 8 | $320.04 |
| 2017 | $7.86 | $11.00 | $3.14 | 35 | 52 | $5,720.26 |
| 2018 | $7.86 | $13.00 | $5.14 | 35 | 52 | $9,360.26 |
| 2019 | $7.86 | $15.00 | $7.14 | 35 | 52 | $13,000.26 |
| Jan–Mar. 2020 | $7.86 | $15.00 | $7.14 | 35 | 12 | $3,000.06 |
| July–Oct. 2020 | $11.00 | $15.00 | $4.00 | 35 | 13 | $1,820.00 |
| Oct.–Dec. 2020 | $9.63 | $15.00 | $5.38 | 40 | 13 | $2,795.00 |
| 2021 | $9.63 | $15.00 | $5.38 | 40 | 52 | $11,180.00 |
| 2022 | $8.25 | $15.00 | $6.75 | 40 | 11 | $2,970.00 |
| | | | | | **TOTAL** | $50,165.88 |

The Court recommends that Sanchez Flores be awarded $50,165.88 in unpaid

minimum wages.

> B. <u>Unpaid Overtime Wages</u>

Both federal and state law require that employers pay employees a 50% premium

for their overtime hours—that is, the hours in excess of 40 that they have worked in each

workweek.  29 C.F.R. § 778.105; N.Y.C.R.R. tit. 12, § 146-1.4.  Although Defendants are

liable under both FLSA and NYLL for failing to pay Sanchez Flores's overtime wages,

Sanchez Flores cannot recover unpaid overtime compensation under both statutes for

any period of overlapping work.  *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11-CV-

3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may

"not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA

and NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19,

2012).  "If a plaintiff is entitled to damages under both federal and state wage law, the

Court has discretion to award [that plaintiff] damages under the statute providing the

greatest amount of relief."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498

(S.D.N.Y. 2017) (alteration in original) (quotations omitted), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018).

The Court recommends Sanchez Flores be awarded recovery for unpaid overtime wages under NYLL.[11]

To calculate the sum of unpaid overtime, the Court must first calculate the regular rate of pay.  For employees compensated on a "weekly salary basis" like Sanchez Flores, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).  "[T]here is a rebuttable presumption that a weekly salary covers 40 hours[.]"  *Shen v. GJ Grp. USA Inc.*, No. 19-CV-2212, 2021 WL 8317105, at *9 (E.D.N.Y. Sept. 8, 2021) (quotations omitted), *report and recommendation adopted*, Order (Sept. 28, 2021).  "The employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours."  *Id.* (alteration in original) (quotations omitted).  By virtue of their default, Defendants have failed to rebut the presumption that the weekly salary was for 40 hours of work.  *See, e.g.*, *Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021) (applying the FLSA presumption on default); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (finding defendants failed to rebut the presumption because "the record [was] completely devoid of any evidence of an

_____

[11] While the typical practice is to calculate the award under both statutes and award whichever is higher, here, Sanchez Flores only conducted calculations for one award for overtime wages.  (Mem. of Law at 17; Pl.'s Damages at 1–2).  And although a FLSA claim only has a two-year statute of limitations absent a showing of a willful violation, the six-year NYLL limitations easily encompasses the entirety of the period in which Sanchez Flores was denied overtime.

agreement or understanding between Plaintiffs and Defendants regarding what the weekly salary was intended to cover").

Between October 2, 2020 and March 22, 2022, Sanchez Flores was paid a flat sum of $55.00 per day. (Compl. ¶¶ 25, 28). Between October 2020 and January 2022, she regularly worked 56 hours per week, (*id.* ¶¶ 20–21), of which 16 hours constituted overtime. Between January 2022 and March 22, 2022, she regularly worked 48 hours per week, (*id.* ¶ 22), of which 8 hours constituted overtime. The overtime hourly rate is 1.5 times the legal minimum wage hourly rate, which results in Sanchez Flores being owed $22.50 for each overtime hour worked in 2020, 2021, and 2022. The Court's calculations are set out below.

|  | **2020** | **2021** | **2022** | **Total** |
|---|---|---|---|---|
| **Hours Per Week** | 56 | 56 | 48 | |
| **Weekly Salary** | $385.00 | $385.00 | $330.00 | |
| **NYLL Regular Hourly Rate** | $15.00 | $15.00 | $15.00 | |
| **NYLL Overtime Rate** | $22.50 | $22.50 | $22.50 | |
| **Weekly Overtime Hours** | 16 | 16 | 8 | |
| **Weekly Overtime Wages Owed** | $360.00 | $360.00 | $180.00 | |
| **Weeks Worked** | 13 | 52 | 11 | |
| **Total Overtime Wages Owed** | $4,680.00 | $18,720.00 | $1,980.00 | $25,380.00 |

Sanchez Flores seeks a total of $25,380.00 in unpaid overtime wages. (Pl.'s Damages at 2; Mem. of Law at 17). The requested amount matches the Court's calculations. The Court thus recommends that Sanchez Flores be awarded the requested amount of $25,380.00 in unpaid overtime damages under NYLL.

C. Liquidated Damages

Sanchez Flores seek liquidated damages under NYLL. (Mem. of Law at 17–19).

An employee can recover liquidated damages under NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). For all NYLL claims that accrued on or

after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due.  *Id.* § 663(1).

In light of the default by Defendants, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under FLSA through "plain and substantial evidence"); *Khan v. IBI Armored Servs.*, Inc., 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer." (quotations and citation omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (Nov. 21, 2016). Therefore, the Court recommends that liquidated damages be awarded under NYLL.

Based on the recommendation that Sanchez Flores be awarded $25,380.00 in unpaid overtime wages, and $50,165.88 in unpaid minimum wages, the Court recommends that Sanchez Flores be awarded $75,545.88 in liquidated damages.

D. Wage Theft Prevention Act Damages

Sanchez Flores worked for Defendants for approximately six years.  For the wage notice claim, she is entitled to recover $50 per day up to a maximum of $5,000.  NYLL § 198(1-b).  For the wage statement claim, she is entitled to recover $250 per day up to a maximum of $5,000.  *Id.* § 198(1-d).  Because Sanchez Flores never received a wage notice or wage statements from Defendants, and because Sanchez Flores worked for Defendants for well over 100 days, she is entitled to the statutory maximum of $5,000 under each provision.  *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order

(Mar. 23, 2021); *De Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020).  Therefore, Sanchez Flores should be awarded a total of $10,000 in WTPA damages.

    E.  Pre-Judgment Interest

    Sanchez Flores also seeks pre-judgment interest.  (*See* Mem. of Law at 18–19).  "NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).[12] Sanchez Flores is entitled to an award of pre-judgment interest on her NYLL damages at a rate of 9% per year.  N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  *Id.* § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (adopting report and recommendation).  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" (quotations omitted)).  The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed. . . ."  *See, e.g.*, *Gunawan*, 897 F. Supp. 2d at 93 (collecting cases).

----

[12] Pre-judgment interest is calculated based on the unpaid wages due under NYLL only, not on liquidated damages.  And pre-judgment interest is not available for violations of the wage statement or wage notice provisions of NYLL.  *See Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015, 2019 WL 2436275, at *6 n.7 (E.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56849, at *1 (Mar. 29, 2019).

The recommended unpaid overtime and minimum wage recoveries available under NYLL are $75,545.88. Sanchez Flores began to work for Defendants in September 2015, and completed her employment on March 22, 2022. (Compl. ¶ 15). Although Sanchez Flores does not provide a particular date that she commenced employment, her claim only stretches back to November 4, 2016; anything before that is time-barred. NYLL § 198(3). Thus, the Court uses November 4, 2016 as Plaintiff's first date of work. The Complaint was filed on November 4, 2022. There are 2,191 days, or about 313 weeks, between these dates. Half of 2,191 is 1,096; 1,096 days from November 4, 2016 is November 5, 2019. The Court recommends that pre-judgment interest be awarded by the Clerk of Court in a daily amount of $18.63 per day from November 5, 2019, until the date final judgment is entered.[13]

F.  Post-Judgment Interest

Sanchez Flores also requests post-judgment interest pursuant to 28 U.S.C. § 1961. (Compl. Prayer for Relief (q); Mem. of Law at 20–21). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment. *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

---

[13] The total amount ($75,545.88) at nine percent annually results in approximately $6,799.13 per year in interest, or $18.63 per day (rounded) based on 365 days per calendar year.

IV.   <u>Attorney's Fees and Costs</u>

It is well-settled that FLSA and NYLL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff.  *See* 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); NYLL § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees[.]").  By virtue of the entry of default judgment, Sanchez Flores is a prevailing Plaintiff.  The "starting point" for determining the amount of attorney's fees to be paid by Defendants is calculation of the "lodestar," which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 U.S. Dist. LEXIS 125161, at *9 (E.D.N.Y. Feb. 26, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 17, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation).  "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).

A. <u>Hourly Rate</u>

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  In determining the lodestar, courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases."  *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotations omitted), *report and recommendation adopted*, 2022 WL 4662247, at *1 (Sept. 30, 2022).  "The burden is on the party moving for attorney's fees to justify the hourly rates sought."  *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill,

27

experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community . . . is the district in which the court sits.").

Lipsky Lowe LLP represents Sanchez Flores and seeks attorney's fees for three attorneys and one paralegal. (Mem. of Law at 21; Lipsky Decl. ¶¶ 7–8). Douglas Lipsky, partner and co-founder at Lipsky Lowe, requests an hourly rate of $450. (Mem. of Law at 21–22). He routinely bills at a rate of $600 per hour. (Lipsky Decl. ¶ 8). He founded the firm in 2016 and has practiced employment law, including wage and hour cases, for over twenty years. (Lipsky Lowe Firm Description ("Lipsky Lowe Bio"), attached as Ex. F to Lipsky Decl. at 1). The Court finds that it is appropriate to award Mr. Lipsky an hourly rate within the range of that awarded to partners in this district. As such, the Court awards Mr. Lipsky the requested hourly rate of $450. *See, e.g.*, *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (finding $450 per hour a reasonable hourly rate for experienced attorneys in connection with a FLSA default).

Milana Dostanitch, a ninth-year senior associate at Lipsky Lowe, requests an hourly rate of $325. (Mem. of Law at 21, 23). She routinely bills at a rate of $375 per hour. (Lipsky Decl. ¶ 8). Since graduating from Fordham University School of Law in 2014, she has exclusively practiced employment law, specifically under FLSA. (Mem. of Law at 23; Lipsky Lowe Bio at 2). The Court finds that it is appropriate to award her an hourly rate within the range of that awarded to senior associates in this district. *See Diaz*, 2022 WL 4646866, at *13 (stating range for senior associates to be $200 to $325). Ms. Dostanitch has been awarded attorney's fees in this district at a rate of $325 per hour in other FLSA cases. *See, e.g.*, *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284, 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022) (approving an award of

attorney's fees to Ms. Dostanitch at $325 per hour in FLSA settlement context), *report and recommendation adopted*, Order (May 31, 2022); (Mem. of Law at 23).  As such, the Court awards Ms. Dostanitch the requested hourly rate of $325.

Bayron Flores Tapia, a second-year junior associate at Lipsky Lowe, requests an hourly rate of $275.  (Mem. of Law at 23).  He routinely bills at a rate of $300 per hour. (Lipsky Decl. ¶ 8).  He has worked at Lipsky Lowe since graduating from Fordham University School of Law in 2021 and has exclusively worked on employment law matters.  (Mem. of Law at 23; Lipsky Lowe Bio at 3).  Mr. Flores Tapia is only a second-year associate, and his requested rate is $75 above the maximum of what is usually awarded to junior associates in this district.  *Diaz*, 2022 WL 4646866, at *13 (stating typical range for junior associates to be $100 to $200 in FLSA cases).  Counsel has not provided sufficient information to justify why Mr. Flores Tapia should be awarded a higher amount.  Given Mr. Flores Tapia's level of experience, and the fact that this has been a relatively straightforward case, the Court recommends that Mr. Flores Tapia's hourly billing rate be reduced to $175 per hour.  *See Cooper v. Dieugenia*, No. 14-CV-6136, 2018 WL 2103200, at *3 (E.D.N.Y. May 7, 2018) (reducing $300 rate of a fourth-year associate to $200 an hour because $300 per hour was "considerably higher" than what was generally approved in this district for attorneys of comparable experience).

LiAnne Chan, a paralegal at Lipsky Lowe, requests an hourly rate of $115.  (Mem. of Law at 21, 24).  Ms. Chan has ten years of experience as a paralegal and has worked primarily on employment law matters during that time.  (*Id.* at 24; Lipsky Lowe Bio at 3).  The typical range of awarded hourly rates for legal support staff is $70 to $100.  *Diaz*, 2022 WL 4646866, at *13.  Similarly to Mr. Flores Tapia, Ms. Chan seeks a rate higher than what is typically awarded to paralegals in this district.  However, Ms. Chan

29

has more than a decade of experience as an employment law paralegal.  The Court recommends that Ms. Chan's hourly billing rate be reduced to $75 per hour.  *See Tarazona v. Rotana Cafe & Rest. Inc.*, No. 16-CV-76, 2017 WL 2788787, at *2 (E.D.N.Y. June 27, 2017) (reducing a requested hourly rate of $125 to $75 per hour for a paralegal with ten years of experience); *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *16 (E.D.N.Y. Dec. 9, 2019) (collecting cases), *report and recommendation adopted*, Order (Mar. 31, 2020).

B.  Hours Expended

Turning to the reasonableness of time expended, courts look to the contemporaneous time records of the attorneys.  The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Id.*  To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter."  *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).  "Descriptions of work recollected in tranquility days or weeks later will not do."  *Id.*  "The contemporaneous time records requirement is strictly enforced[.]"  *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *7 (E.D.N.Y. Aug. 31, 2016).

"[C]ourts are . . . expected to take into account their own familiarity and experience both 'generally' and with the particular case at hand, rather than attaining 'exactitude' with respect to each individual billing entry."  *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319, 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15,

2010) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)), *report and recommendation adopted*, 2010 WL 2539661, at *1 (June 17, 2010).  "The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *See Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335, at *1 (Mar. 12, 2018).  Courts have "the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application."  *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quotations omitted).

Counsel submitted contemporaneous billing records showing the legal services performed, including the dates that the services were provided, the amount of time expended, and a brief description of each task performed.  (*See* Contemporaneous Time Entries dated May 30, 2023 ("Contemporaneous Time Entries"), attached as Ex. H to Lipsky Decl.).  According to the billing records submitted, Lipsky Lowe attorneys and paralegals spent a total of 65.11 hours (5.1 hours by Mr. Lipsky, 31.1 hours by Ms. Dostanitch, 24 hours by Mr. Flores Tapia, and 4.91 hours by Ms. Chan) on this case.  (Contemporaneous Time Entries; Mem. of Law at 21).  The Court finds these hours excessive and unnecessary for a number of reasons and recommends an across-the-board percentage cut.

*First*, a reduction is warranted because the hours requested include non-compensable time spent by attorneys.  For example, counsel includes hours spent translating phone calls and documents for Sanchez Flores.  (*E.g.*, Contemporaneous Time Entries at 1 (attributing 2.30 hours to Mr. Flores Tapia for "[t]ranslating call with client and M. Dostanitch")).  Courts in this Circuit have rejected translation services as

"legal work" for which attorney's fees may be awarded.  *See, e.g.*, *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667, 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) ("Translation . . . is not legal work[.]"); *Wang v. XBB, Inc.*, No. 18-CV-7341, 2023 WL 2614143, at *9 n.10 (E.D.N.Y. Mar. 23, 2023) (rejecting counsel's effort to recover attorney's fees for translation services as "improper[]" for "non-legal work").  The Court thus declines to award attorney's fees for those hours.

*Second*, 65.11 hours far exceeds the number of hours regularly approved in FLSA and NYLL cases that proceed almost immediately to default judgment.  *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding 13.51 hours reasonable, noting that "[t]he court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York to determine the reasonableness of a fee request" on default); *Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).  Moreover, counsel spent time pursuing claims not cognizable under law.  *See supra* at pp. 3 n.3.

In light of the non-legal work included in counsel's time logs and the excessive number of hours requested, the Court recommends that the total amount of hours be reduced by 25% across the board.  This results in the following fee calculations, based upon the adjusted hourly rates:

|  | Mr. Lipsky | Ms. Dostanitch | Mr. Flores Tapia | Ms. Chan | Total |
|---|---|---|---|---|---|
| **Requested Billing Rate** | $450.00 | $325.00 | $275.00 | $115.00 |  |
| **Awarded Billing Rate** | $450.00 | $325.00 | $175.00 | $75.00 |  |
| **Requested Hours Billed** | 5.10 | 31.10 | 24.00 | 4.91 |  |
| **25% Reduction in Hours** | 3.83 | 23.33 | 18.00 | 3.68 |  |
| **Attorney's Fees** | $1,723.50 | $7,582.25 | $3,150.00 | $276.00 | $12,731.75 |

The Court recommends that a total of $12,731.75 be awarded for attorney's fees.

C.  Costs

Counsel also seeks reimbursement for costs consisting of $402 in court filing fees

and $273.75 in service of process costs.  (Lipsky Decl. ¶ 7; Costs Entries dated May 24,

2023 ("Costs Entries"), attached as Ex. I to Lipsky Decl. at 1).  Under both FLSA and

NYLL, a prevailing plaintiff is entitled to recover costs from the defendant.  *See* 29

U.S.C. § 216(b); NYLL § 663(1).  Ordinarily, plaintiffs may recover "[c]osts relating to

filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814 Welfare

Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Only

those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable.

*Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting

*Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Sanchez Flores's counsel has submitted invoices as evidence for each of the

requested costs.  (Costs Entries).  The filing fees are also supported by the docket entry

which indicates that the filing fee was paid.  (Dkt. No. 1); *see, e.g.*, *Shalto v. Bay of

Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013)

(holding that filing fees are recoverable without supporting documentation if verified by

the docket).  The Court deems these costs to be reasonable.  The Court recommends that

Sanchez Flores be awarded $675.75 in costs.

CONCLUSION

For the reasons stated above, it is respectfully recommended that default

judgment be entered against Defendants and Sanchez Flores be awarded:

- $50,165.88 in unpaid minimum wages;

- $25,380.00 in unpaid overtime wages;

- $75,545.88 in liquidated damages;

- $10,000 in Wage Theft Prevention Act damages;

- Pre-judgment interest in the amount of $18.63 per day between November 5, 2019 and the day judgment is entered;

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a);

- $12,731.75 in attorney's fees;

- $675.75 in costs.

The Court recommends dismissal of Sanchez Flores's uniform reimbursement and maintenance claims, civil assault and battery claims, and negligent retention and supervision claim.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Sanchez Flores is directed to serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*  February 14, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York